We're here on Friday, November 18th, 2022 in Montgomery, Alabama, our last day here for the third calendar of the 11th Circuit. Judge Bouley is appearing by Zoom, and he's from the Northern District of Georgia, and we thank him very much for his service and for agreeing to be a member of this panel this week. We appreciate it greatly. Thank you. The first case on the calendar is United States of America v. Christopher Miles. Is everyone present and prepared to argue? Yes, Your Honor. Yes, Your Honor. Okay, you may proceed. I'm going to keep everyone to their time today, okay? Understood. So if you've heard that I've been lenient this week, it's okay. May it please the court, counsel. The court must decide today whether Florida's offense of unlawful possession of a listed chemical is a serious drug offense under the Armed Career Criminal Act. It is an issue of first impression in our circuit, as far as I'm aware. There also is plenty of groundwork about the Armed Career Criminal Act for the court to rely on in making this determination. It's important to note first that Florida's statute is titled unlawful possession of a listed chemical and doesn't reference any type of a listed chemical actually having the intent to manufacture a controlled substance. And the second is to possess a listed chemical with reasonable cause to believe someone else will manufacture a controlled substance. The Florida statute does not require that the violator actually have the intent to manufacture a controlled substance. This court needs to look at the definition of serious drug offense in the Armed Career Criminal Act, which covers offenses which involve manufacturing, distributing, or possession with intent to manufacture or distribute a controlled substance. There is plenty of law out there about what Congress meant when it said involve. The most recent case that's applicable to the situation is the Shular case. And in the Shular case, the Supreme Court said that involve is not, they said a few things. First, that it's not a generic offense matching statute because Congress didn't say is these offenses, rather it covers conduct. But that for a state law offense to involve the conduct in the definition, it must necessarily entail that conduct. That test for Shular has been adopted by this court in United States v. Smith and other cases as requiring that the statute necessarily entail manufacturing, distribution, or possession with intent to manufacture or distribute. Can I get you to address something for me that is the thing that I'm trying to figure out in this case is federal law also prohibits the possession of a precursor substance with the reasonable cause to believe that it would be used to manufacture meth, right? My understanding of the federal statute would be that you must intend to manufacture. So you think there's a meaningful difference between those two statutes? I do. Okay. And we're talking about subsection one, I believe, of the definition of serious drug offense when it refers to federal offenses. Subsection two refers to the state law offenses. Yeah. And I guess sort of the next question is why would a federal offense be a serious drug offense and then the state law offense that is maybe the materially identical match, maybe not the exact match, but a very similar match for that federal offense not be? I don't think that it is a material match. I think there is a significant difference in the statute. Let's just assume that they are the same. Why would the federal offense be a serious drug offense under the ACCA but the matching state offense not be? I think Congress spoke in subsection two when it used the language intent to manufacture. It wrote an intent requirement into the definition of serious drug offense when we talk about state law offenses, possession with intent to manufacture. That's in there. And that's not in Florida statute. So when it talks about state offenses and their conduct, it talks specifically about intent to manufacture a controlled substance. Again, Florida's statute titled unlawful possession of a listed chemical. The definition of serious drug offense is not supposed to reach any conduct that somehow relates to distribution or manufacturing. The best example of that is that it does not cover simple possession of drugs. Yeah. But the reason it doesn't cover simple possession is because that doesn't relate to manufacturing or distribution, right? I mean, isn't the statute meant to carve out simple possession offenses from other offenses? It depends on how broadly the court reads the term involving. I think we have to interpret involving as the Supreme Court has to be necessarily entails. If it was just relates to or connects to as the Eason case initially read it, the Sixth Circuit initially read it before they came out with the Fields decision. One of the footnotes in there points out that, you know, almost anything relates to anything else. I mean, if we go back far enough, everything can be related somehow. Right. The butterfly effect. So, but I guess why wouldn't a crime, if the crime is defined as a manufacturing crime, right? The word manufacturing is, you know, part of the crime. It's not just possession. It's possession with something manufacturing. Why isn't that enough to say, nah, this fits the definition? Because Florida's crime, oh, two reasons. One, I think it's too attenuated from actual manufacturing because you can violate the statute in circumstances where meth may never or other drugs may never be manufactured. And then secondly, the statute doesn't require that the Florida statute, unlawful possession, doesn't require that the offender engage in that conduct or have that intent. It's reasonable cause to believe and it could be a third party that's actually intending to do the manufacturing and the offender under the Florida statute need not have actual knowledge that that third party even has that intent. The reasonable cause standard, as argued in my brief, I think is more akin to negligence, that a person is aware, a reasonable person being aware of these facts would know that, but it doesn't require the person to actually have actual knowledge that someone intends to manufacture that offense. Yeah. So here's the definition, the federal definition of the federal crime, and I would like you to explain to me how it's different from the Florida crime. So this is 21 U.S.C. 841C2. Offenses involving listed chemicals. Any person who knowingly or intentionally possesses or distributes a listed chemical, knowing or having reasonable cause to believe that the listed chemical will be used to manufacture a controlled substance. What's different? It appears to be worded similarly, Judge, but we're not operating under the federal. Yeah. So I mean, I think it's identical, but so your real argument then is that we should read the part of the ACCA about state law offenses to be more narrow than the part of the ACCA about federal offenses, right? And that's your actual argument? I think that Congress has spoken about that when they inserted the language intent to manufacture in subsection two of the definition. And so I think we have to assume that Congress meant to cover offenses with intent to manufacture, possession with intent to manufacture, not reasonable cause to believe in that section. Well, yeah, but this is about the other section. This is about involving manufacturing, right? And I believe they're worded differently. I mean, one is sort of federal offenses that are enumerated there in the definition. The other is this involving language that sort of refers to conduct because state law offenses don't always track the language of similar federal offenses. And I think the mens rea distinction is important. The statute speaks to the offender's intent, possession of intent to manufacture a controlled substance. The Florida statute does not require that intent. Thank you.  Ms. Forbes, good morning. Good morning. Good morning. Thank you, Your Honor. May it please the Court. I think that Judge Bratcher has a point that what we're talking about here, well, one of the things that we're talking about here is how this offense involves manufacturing of a controlled substance. I think that the issue with the Sixth Circuit panel opinion in United States v. Fields, which Your Honors had alerted us to. Yeah, I mean, I'll just say, you know, your brief relies extensively on the Sixth Circuit case that Fields overruled or said the Supreme Court overruled. So, you know, like half of your brief was overruled by the Sixth Circuit. And the district court here relied exclusively, only on the Sixth Circuit opinion that the Sixth Circuit overruled in Fields? Yes, Your Honor. And I think that when you look at the reasoning of Easton and the reasoning of Fields, that with respect, there were a couple of things that Fields got incorrect. I think that, you know, we all seem to be under the impression, although some other circuits may disagree, regarding Shuler's adoption of the party's agreement that the definition of involving was, quote, includes as a necessary circumstance, condition, or consequence, which then the Shuler court shorthanded as necessarily requires or necessarily entails. So when you look at the plain language of that, includes as a necessary consequence, manufacturing a controlled substance, it is very difficult to see how a statute, a state statute, that has as an element the intent or knowledge that manufacturing a controlled substance will happen, how that does not include as a necessary circumstance or consequence the manufacturing of a controlled substance. I think that they— Yeah, I mean, isn't—so let me ask you this and tell me if I'm seeing this wrong. So this is basically, this statute, both the federal statute and the state statute, are sort of very specific attempt crimes, right? They're—we're outlawing the possession of something with the knowledge or intent it's going to be used to manufacture something bad, right? So it's not, you know—the possession isn't itself bad. You know, I actually took a suit to Fed this morning. So the possession is not itself bad. It's the intent. So it's like an attempt crime? Correct. And then Field says they're just—this statute just doesn't cover attempt crimes at all. Do we—let's just assume we reject that and say, yeah, there are certainly some attempt crimes that are covered by this. Why would this particular attempt crime be one of those that is covered? Does that make sense? Yes, Your Honor. It would be covered because it requires either an intent to manufacture, knowledge that it will be used, actually will be used to manufacture, or reasonable cause to believe that it will be used to manufacture. And since that is an element of the state crime, when you then compare it to the federal definition of—the conduct of manufacturing, it's clear that it includes as a necessary circumstance or consequence that manufacturing conduct. And I think that's one of the places where the Fields panel, as split as it was, got it wrong, is that they focused on the Kentucky definition of manufacturing and that how under Kentucky law, the Supreme Court had said, well, manufacturing requires a second step. It requires a necessary chemical plus contraband, such as paraphernalia, that would be used in the manufacturing of controlled substances, or it requires that you have actually combined two ingredients to start the manufacturing process. And so the Fields panel hung their hats on the Kentucky definition of manufacturing. The problem is, as reiterated in the Shuler case, the Supreme Court said, when analyzing this statute, you look at state law for the state elements of the state offense, but when you're looking at the definitions of the words used in the federal definition of serious drug offense, we're supposed to use federal law. And so I think that was the mistake that led them down that incorrect road. And I do think that in that respect, with respect to that Kentucky statute, the Fields panel did get that wrong. I think they applied Shuler incorrectly. The other issue in Fields that we actually talked with your colleague about a lot yesterday, and which I think opposing counsel alluded to a few minutes ago, is the definition that you, the third category, right, it's manufacturing, distribution, or possession with intent to kind of sucks up that third prong. So is there anything that would be covered by that third prong under your definition of manufacturing that would not just be covered by manufacturing? Yes, because of the way, so this is where it actually differs between the question yesterday regarding distribution and possession with intent to distribute. Because if you actually read what says, the possession with intent to manufacture is possession of a controlled substance with intent to manufacture another controlled substance. So that is actually markedly different. I mean, there may obviously be some overlap when you're using other controlled substances to create other controlled substances, but obviously the manufacturing of a controlled substance, especially when you look at the definition in Title 21 of that conduct, can include the combination as, for example, with this particular controlled substance at issue in this case, which is methamphetamine, you typically don't make methamphetamine from other controlled substances or from other meth. It's possible, for example, a person can be convicted of manufacturing a controlled substance from having methamphetamine and they're turning it into crystal meth. Or the more common is marijuana. You start with marijuana, already controlled substance, and you're extracting the THC from it, still a controlled substance. But that under the definition could qualify as manufacturing conduct. And so in this, actually for manufacturing, it's not really it is actually a separate, it can be subsumed in the content of manufacturing, but there, I do also, so that's one difference, is that possession of a controlled substance with intent to manufacture a controlled substance is a separate crime than manufacturing because there are, in fact, many instances of manufacturing that don't involve starting with controlled substances. I think the second distinction is that while those lines can be blurred sometimes, I think there is points where there's a distinct difference between possessing something with intent to manufacture versus attempting to manufacture versus obviously the completed crime of manufacturing a controlled substance. But I think that when you look at the field's opinion, the fact that those, that possession with intent to manufacture, manufacturing but under field attempt to manufacture, basically the equivalent, the state equivalence of 846 would not count. I think that can't be read into the plain language of serious drug offense. And it certainly can't be read into our circuit precedent, whatever the Sixth Circuit may have been relying on. We have circuit precedent here in the 11th Circuit, namely the Smith opinion, the Hyde opinion, the Conage opinion, that all says, as your Honor mentioned, the federal equivalence of those clearly qualify, Hyde, I know, address controlled substance offense under the guidelines. But our circuit has always found that the ACCA definition of serious drug offense was broader and included more conduct than a controlled substance offense. So if possession of a listed chemical with intent, knowledge, or reason to believe it would be used to manufacture a controlled substance is a controlled substance offense under the guidelines, it's difficult to find how under our precedent and under Shuler how it would not be a serious drug offense under the ACCA. And so I think that is a third way that the fields panel also got it wrong. I think, and again, I agree with my colleague yesterday that that's probably not a question this Court needs to answer if it doesn't feel like it because I think under the plain language of the statute, the definition adopted by the Shuler Court of involving and our circuit precedent that abrogate or overturn, you know, based on that, this Court can find that this particular Florida statute is a serious drug offense. But I do think that the fields court went a step too far by saying any inchoate versions of these offenses would never qualify under the Armed Career Criminal Act definition of serious drug offense. I don't think that that's at all what Congress intended. I think that... Let me just get just to make sure I understand the argument. So let's just assume I completely agree with you and I reject fields to the extent that I'm not willing to say that all attempt crimes, all conspiracy crimes, all, you know, all inchoate crimes are not covered. So I've already, I've gone that far. But this one is not just attempt to manufacture. It's not, you know, a conspiracy to manufacture. It's possession of something with the knowledge that that thing will be used to manufacture. Why doesn't that, I mean, I think the other side's argument really focuses on that reasonable cause to believe language. So what do you say about that specifically, that reasonable cause to believe, the mens rea aspect of it? Well, first of all, I think that our circuit precedent says that there has been no mens rea requirement that can be read into that definition of serious drug offense, specifically United States v. Smith, which I cited in my brief. Which Smith? Xavier or... It's the one at 775 F 3rd 1262, the 2014 United States v. Smith. I'm sorry, I don't know. There's two Smiths. It is the pre-Shuler Smith, but it is the Smith that this, you know, or other panels of this court has held that post-Shuler was basically, I mean, Shuler by affirming the 11th circuit below, which relied on that Smith and the idea that no element of mens rea is expressed or implied by the definition. So our primary argument is, first of all, it doesn't matter what level of mens rea you consider a reasonable cause to believe. It is not a requirement in that we think that defendant's definition or defendant's interpretation of that clause with intent to manufacture or distribute being attached to all three verbs is inconsistent with Smith. It's inconsistent with the way the commas fall in the statutory language. So I think that that is a pretty easy argument to reject. But even if the court were to consider that there was some level of minimum mens rea inconsistent with the court precedent in Smith, that could be read into this definition. Our argument is that reasonable cause to believe isn't negligence or recklessness. It's basically constructive knowledge. It's at that same level, which is supported by other precedent. It's supported by the definition of knowledge as outlined in the Supreme Court Borden case based on the model penal code. And so, therefore, it satisfies the requirement that that statute involves meaning, necessarily entails meaning, includes as a necessary circumstance, condition, or consequence, the conduct of manufacturing. Let me ask you this. Do you know of any other cases pending in our circuit about this issue or about a comparable issue? I do not. Certainly not with respect to this statute. And I don't know that I have of any personally. I don't know of any that exists with respect to manufacturing, that particular aspect of the serious drug offense definition. I would also note that in United States v. Hyde, which was cited in my brief, again, I sort of refer to that. That was the 11th Circuit published case that talked about the federal equivalent of the statute, which Your Honor read and cited, and finding that that was a controlled substance offense. But I think some of the language in that is very applicable and appropriate here because, essentially, I agree with Judge Brasher that the federal equivalent has the same elements as this former state statute that we're talking about right here. And in that case, the 11th Circuit found that, essentially, possession of illicit chemical because it has this additional requirement mens rea makes it, essentially, it is the equivalent of attempt to manufacture. And because it's, I think the exact words were that because 841c2 and 846, the federal equivalent of attempting to manufacture a controlled substance, quote, have the same object, that means that they should be treated the same under the guidelines. And, therefore, I think that, certainly, it's persuasive to Your Honors that considering this Florida statute, which has the same elements, must have the same necessary consequence as attempt to manufacture or manufacturing because they have the same ultimate object, which is the manufacturer of a controlled substance. And I would further note that in United States v. Cottage, in further published precedents that post-States Shuler, this Court affirmed that those words in the ACCA definition don't have to be included as necessary elements themselves in the state statute for it to apply. And so I think when you look at all that together, it's claimed that possession of illicit chemical under the Florida statute is a serious wrong offense. Thank you. Thank you. Thank you, Ms. Forbes. Your Honors, the Florida statute issue is further removed from the conduct of manufacturing than the Kentucky statute that was discussed in these main fields. In fields, that statute requires the offender actually have the intent to manufacture the controlled substance. The government's argument is that there is no mens rea requirement in the definition. I don't think that's an accurate reading of the precedent. I think that Conage and the other cases said that there is no mens rea requirement regarding the illicit nature of the substance. Holding that these trafficking offenses, we could infer a mens rea because of the large quantity of drugs that would have to be involved there. So the Court still looked for some type of mens rea, said that it didn't have to be explicit as an element in Florida statute, but there was still discussion of this inferred intent to distribute from a purchase or from possession of this large quantity of drugs. The Florida unlawful possession of illicit chemical statute is much further removed from the conduct in the definition of serious drug offense and the definition specifically talks about possession with intent to manufacture. Now, the government wants to limit that to possession of a controlled substance with intent to manufacture another controlled substance. That language is not in the statute. The plain language of the statute just refers to possession of something with the intent to manufacture a controlled substance. So I think the intent requirement is there when we reference state offenses in the definition of serious drug offense and is not there in the Florida statute that's at issue here. I don't think this Court needs to go as far as to decide whether any inchoate crimes can qualify. I think this is really specific to the offense at issue here and the mental state that's required from the offender versus the mental state that's enumerated in the statute, intent to manufacture versus reasonable cause to believe. I do think that reasonable cause to believe is lower than, I think it was a Tennessee statute in Eason that talked about recklessness, recklessly possessing these ingredients. I think reasonable cause to believe is further down from that. I don't agree that it requires actual knowledge that some controlled substance will be manufactured. So I think that when we think about the aims of the Armed Career Criminal Act to punish repeat and dangerous offenders with firearms harshly with a 15-year mandatory sentence, it makes sense that Congress would speak to offenders who actually knew that what they were doing would result in the manufacture of methamphetamine versus an offender who was negligent with his possession of an otherwise legal item, should have known from the facts that he had that manufacturing would occur, but didn't have actual knowledge. And that's what we have to assume under the categorical approach. I think that is the least culpable conduct under the Florida statute. So that's what the court needs to examine and determine if that is a serious drug offense that involves possession with intent to manufacture. Does it necessarily require that the defendant have possessed something with intent to manufacture controlled substance? And it does not because the offender doesn't need to actually know that or have that intent. I think Congress spoke on this issue when it put the word intent in the statute, and I don't think that it's fair to ignore that. It may be analogous to the federal definition that's in the other part of the statute. That portion of the definition is worded differently and refers to offenses. And frankly, that is not the portion of the statute that we're here under. Mr. Miles does not have a federal conviction of any of qualifying offenses. He has a state conviction. And the state conviction has a different level of mens rea than what is explicitly laid out in the federal definition of a serious drug offense. Thank you very much, both of you. Thank you for your arguments. And this has been a very interesting topic of discussion for this entire week. So thank you for the argument.